## THE STATE v. JOSEPH FALKINBURGE.

If F reside in one county, and owns lands in another, on which he grazes cattle, he is liable to be taxed for such cattle, in the township, where they graze.

In the assessment of taxes, the State, county, and township tax, ought to be kept separate; for they are imposed by different authorities, for different objects, one of which may be lawful, and the other altogether unlawful.

Nothing short of express words will deprive this court of jurisdiction.

This was a *certiorari* directed to the Commissioners of Appeal in cases of taxation, in the township of Downe, in the county of Cumberland.

The following is a copy of the return to the *certiorari.*

*To the Justices of the Supreme Court*
*of Judicature, of the State of New Jersey :*

In obedience to the writ of *certiorari* of the State of New Jersey, to us, the Commissioners of Appeal for the year 1834, of the township of Downe, directed, commanding us to certify, and send to the Supreme Court, the proceedings, touching a certain assessment of taxes made by the Assessor of the township of Downe, in the county of Cumberland, assessed on one Joseph Falkinburge, and our judgment thereon, upon the appeal of the said Joseph by us rendered on the second Tuesday of November last. We do certify that we met according to law, and that Lucius Q. C. Elmer, Esq. appeared before us and appealed in behalf of Joseph Falkinburge from the assessment of taxes made by the Assessor of the township of Downe, on the said Joseph Falkinburge ; and Edmund Sheppard, Esq. the Assessor of said township, also appeared before us with his duplicate. It appeared to us, that the said Joseph Falkinburge was assessed for the State, county and township taxes in the township of Downe, for the year 1834, the sum of forty-five dollars and seventy-five cents ; and that sum was made up by an assessment on land of said Joseph Falkinburge, situate in the township of Downe, the sum of twenty-one dollars ; and an assessment on ninety-nine neat cattle at the sum of twenty-five cents each, twenty-four dollars seventy-five cents. The said assessment was appealed from, on the ground that the land was assessed relatively too high, and that the cattle were not

The State *v.* Falkinburge.

assessable in the township of Downe, the said Joseph Falkinburge not residing there. It was well known to us that the said Joseph Falkinburge had not at any time resided in the township of Downe, but resided in the county of Cape May at the time of the assessment, and for a long time before and since ; but it appearing to us that the land was justly assessed, and was not relatively too high, and that the cattle of said Joseph Falkinburge, to the number of ninety-nine, above the age of three years, were at the time of the said assessment, and for some time before, actually kept and pastured day and night, by said Joseph Falkinburge on his mea dow, situate and being in the township of Downe, and it appearing to us that the said Joseph Falkinburge was not taxed for the said cattle, in the township in which he resides, in the county of Cape May, we did, after due examination and consideration, give judgment against the said Joseph Falkinburge the appellant, and confirm the said assessment. And we do further certify that the said assessment was made out and contained on the duplicate or transcript of the taxes, in the hands of the said Assessor, as follows :

| Names | Acres Improved Land | Acres Unimproved land | Val. Land | Neat Cattle No. | Amount of Tax. |
|---|---|---|---|---|---|
| Jose'h Falkinburge | 200 | 60 | $210 | 99 | $45 75 |

All which is certified under our hands and seals, this 14th day of March, A. D. 1835." Upon the return of the *certiorari*, the said Joseph Falkinburge assigned the following reasons for reversing the decision of the Commissioners, and quashing the assessment.

1. Because the said Joseph Falkinburge was assessed for taxes, on ninety-nine neat cattle, in the township of Downe, when he was not an inhabitant of the said township, but was an inhabitant of the Middle township, in the county of Cape May, where the said cattle were legally assessable.

2. Because the said Commissioners ought by the law of the land, to have given their judgment, upon the said appeal, in favour of the said Joseph Falkinburge, and not against him.

3. Because the said assessment, and the judgment and proceedings of the said Commissioners, were and are illegal and void.

*L. Q. C. Elmer*, for Falkinburge.

*R. P. Thompson, contra.*

RYERSON, J.    The defendant who prosecutes this writ, lives in Cape May, but owns land in Cumberland, on which he grazes cattle.    At the time of the annual assessment in the year 1834, and for some time before, he had feeding on these lands ninety-nine cattle subject to taxation.    An assessment on these cattle was made in Downe, from which the defendant appealed; but not obtaining the relief sought, he has sued out this writ.

But we have been met in the threshold of this case, with the objection, that we have no jurisdiction.    It is not indeed denied, that this court has a general, superintending controul by *certiorari*, over all inferior jurisdictions proceeding in a summary way, and over all Commissioners and officers appointed to execute a trust or power, general or special.    It was contended however, that in this particular case, the jurisdiction is taken away by the words of the statute, *Rev. Laws*, 308, *Section* 3, which declares that the judgment of the Commissioners shall be final and conclusive.    But I can find no case where such general words were allowed that potency.    *Rex* v. *Morely*, 2 *Burr.* 1040, is a case to the contrary.    It seems, nothing short of express words will deprive this court of jurisdiction.    1 *Penn.* 335, *Vunck* v. *Whorl;* 3 *Hal.* 305, *Ackerman* v. *Taylor.*    In the well known case of *The State* v. *Wilson*, 1 *Penn.* 300, this objection was not taken.— PENNINGTON, Justice, expressed a doubt about the regularity of the proceeding, but wherefore, he does not say.    And in New York, *Lawton* v. *Comrs. of Highways*, 2 *Caines' Rep.* 179, the Supreme Court held proceedings reviewable, although the statute declared them conclusive.    It would seem from consulting the cases referred to above, that nothing short of express

words will deprive this court of its jurisdiction. But I am far from thinking it would be an unreasonable exercise of discretion, to refuse the writ, whenever the exigency of the public affairs, would not tolerate an interference with the prompt collection of taxes.

The principal point sought to be settled, is, whether these cattle are liable to be taxed out of the township where the owner has his domicil. For the defendant it was contended, that the general rule of law is, that personal property follows the owner, and is subject to the law and burdens of his domicil, unless some law of the place where it is situate, conflict with the law or domicil. And for the proof of this proposition his counsel cited 1 *Green,* 326, *Varnum* v. *Camp.* But let us test this proposition by applying it to a few cases. A man in New York, or Philadelphia, thinks proper to open in this State, a store or shop for the sale of merchandize. Which has the right to tax the capital of that store, or the business there carried on, New Jersey, or a neighbouring State? Or suppose he establishes a tannery, or carriage making establishment, a manufactory of clothing, of harness, or sadlery. Who would think of taxing the capital employed in this various business, out of this State, where the owner may happen to live? Or, to put a stronger case, suppose a Bank established here, with a capital of half a million, nine-tenths of which was owned by non-residents. Which would have a right to tax the stock, this State, or another? And yet this capital is peculiarly afloat, both as respects the ownership and employment. The truth is, that personal, as well as real estate, has a locality, although not so permanent, nor always ascertained with so much certainty. It appears to me therefore, that the counsel for the defendant has laid down his premises with too much latitude. Personal property would not seem to be subject to the burdens incident to the owner's residence. Nor does the case cited, support the position assumed, or go beyond prescribing a rule for ascertaining the true owner, in law or equity. Neither is the position reasonable. A man's personal property, his choses in action, his trade and business, need and receive the protection of the laws of that country, where they are situate, accruing, or carried

The State *v.* Falkinburge.

on. They have all the benefit resulting from the society in whose midst they are, without regard to the owner's residence. They should therefore pay their part of the expense of maintaining and administering those laws, and supporting that society. It appears to me selfevident, that if an inhabitant of Philadelphia, thinks proper to own land, and carry on the business of a grazier in New Jersey, all the capital invested in that business, whether in lands or cattle, should assist to bear the expenses of those institutions by which the owner's property is protected. For his personal protection, he may be personally taxed, (in contradistinction to an assessment on his estate,) where that personal protection is enjoyed.

If I am correct in this principle, as applied to States or nations, it seems equally to extend to the subdivisions of any particular State. Those subdivisions may have, and in our State, actually have, their peculiar burdens and expenses, advantages or disadvantages. I can perceive no reason therefore, why the owner of cattle with which, grazing lands are stocked, should not be taxed, where the owner's profit on those cattle is made, or accrues. Just as a tannery, or store are assessed as such, independent of the tax on the lands.

It has been supposed that the 1st *Section* of the act, of 1833–4, *Pamphlet Laws,* 169, militates against this conclusion. But all the inference which can be legitimately drawn from that act is, that the Legislature did not think proper to subject nonresident owners of mere chattels, to that particular tax. And it was also said, that the 3d Section prescribed a rule with regard to dogs, and a particular kind of horses, which were exceptions to the general rule of law, and as such, proved the truth of the rule, as the prosecutor claims it. But with regard to dogs, the departure from the established rule is to show the person who is to pay; that is he who harbours, and not the owner: but does not intimate where he (the man who harbours) is to be assessed, leaving that to be settled by other principles, or enactments. And with regard to the horses, they were likely to be out of the very place, where, in justice, and upon the general principles on which I insist, they should be taxed, before the assessment could be made : and to prevent their

escape altogether from taxation, or being subject to it in a wrong place, and to remove all difficulty in so peculiar a case, the enactment was made in affirmance, and not as an exception to the general principle, which ought to prevail.

Again : It was insisted that the general scope and import of the provisions of our general law respecting taxes, *Rev. Laws,* 465, is against the conclusion to which I have come. But no such hostility can be found in the act. It is true, a man's personal property subject to taxation by our law, will generally be found within the bounds of the township where he resides. And upon that general basis, the law is framed. But it is equally clear, that the Legislature by that very act, (see Section 13th,) contemplated cases where the persons against whom the assessment was made, were not to be found in the township, and other persons too, than mere *non-resident landholders.* The section just referred to, has no particular reference to landholders, as such merely: Nor is it in my opinion, confined to the single case of a removal after the assessment, and before the payment of the taxes. The language of that section is too broad for such a construction. We were also particularly referred to the first section of this act, as contemplating that the personal property of none but residents would be taxed. The first branch of the section prescribes the duty of the assessor to take a complete account of all the persons and property liable to taxation, which must necessarily mean all in his township, wherever the owners may live. The next branch of the section prescribes the duty of its inhabitants to render such true account. But there is nothing in either branch of the section, or in both taken together, to limit the general language of the first, to the chattels of resident owners.

If therefore, there were no other objection to this assessment, than what I have thus far considered, I should think it ought to be affirmed. There are however others of a more formal nature. Among these, is the confounding together, the tax upon both lands and cattle, according to that portion of the general assessment, which is returned to us. But accompanying that, is the certificate of the Commissioners, showing the relative assessment on the land and cattle. This however ought

to be shown by the assessment itself. But without expressing any definite opinion upon this point, there is another objection, which appears to me insuperable. That is, the State, county, and township taxes, are all blended together. There is no authority for this. They ought to be kept separate, being taxes imposed by different authorities, for different objects, one of which may be lawful, and the others altogether unwarranted. Where any man thinks proper, he has a right to look into any one of these taxes separately, and have its legality determined by the appropriate tribunal. This cannot be done, when all the different taxes are confounded together. The counsel for · Downe, seems to think this practice generally prevalent throughout the State. This does not accord with my observation, nor can I think it true. But whether it be true or not, can make no difference as to its legality. If such a practice prevail, it should be corrected. I think therefore upon a view of the whole matter, that this assessment should be quashed.

HORNBLOWER, C. J. concurred.

FORD, J. It is objected to this assessment, that personal property, by the common law, follows the owner's residence, and is consequently taxable only in the township and county where he resides ; that the two exceptions, as to covering horses and dogs, serve to prove the general rule, and that the remedy for non-payment, which is by a warrant sued out in the county of Cumberland, cannot be executed on the owner in Cape May.

This rule of the common law, that personal property follows the owner's person, must always yield to statutory regulations where the two laws disagree.

Now the township Assessor is directed by statute to make an exact list yearly, of the " *lands and chattels,*" in his township, " *rateable by law.*" *Rev. Laws,* 465, *Section* 1. It binds him to enter rateable *chattels* on his list, as much as to enter *lands.* Each description is specified in the same sentence by its appropriate name, and a discretion to omit one would extend to the other.

As " all assessments in the year," are to be regulated " by this list," its fullness is of high and general importance, and

The State *v.* Falkinburge.

especially as it respects the land, which is made liable for the *residue* of the township quota.

Dogs and covering horses are not exceptions to the rule that all rateable chattels in the township shall be placed on the Assessor's list, but to another rule, respecting who shall *pay the tax on them*, which is quite a different subject.

The remedy for the tax is argued to be inadequate, because the process of Cumberland cannot operate on the owner in Cape May. May the Assessor omit what the statute requires him to do, because the enforcement of the tax, which is not committed to him, will be difficult? This surely is not his concern. But where is the supposed difficulty? a warrant to levy the tax out of the delinquent's goods will reach all his stock when they come again on the land, and the crops as soon as they are severed, under the 17th section, and for want thereof, his body, if he comes on the land or into the county. The remedy seems to be as efficacious as it is summary.

But even if it were defective it could not repeal the clause for taking a list of the rateable "lands and chattels" in the township.

Cattle *in transitu*, stopping in a township for the temporary rest and refreshment of the drove on a journey, are evidently not within the spirit, meaning or reason of the statute, for then they might be taxed in every township through which they travelled. The judgment of the Commissioners of Appeal must be affirmed.

*Assessment quashed.*

CITED in *C. & A. R. R. Co.* v. *Hillegas*, 3 *Harr.* 12 ; *State* v. *Kingsland*, 3 *Zab.* 89 ; *State* v. *Quaife*, *Id.* 90 ; *State* v. *Ross*, *Id.* 524 ; *State* v. *Howell*, 4 *Zab.* 520 ; *Pat. & Hud. Riv. R. R. Co.* v. *May, &c., Jersey City*, 1 *Stockt.* 438.